# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**CHRISTINA JACOBS,**

        **Plaintiff,**

**v.**                                                        **Civil Action No. 1:12cv131**
                                                             **(Judge Keeley)**

**ALICIA WILSON,**

        **Defendant.**

## REPORT AND RECOMMENDATION

### I. Introduction

On August 21, 2012, the *pro se* plaintiff, Christina Jacobs, an inmate formerly incarcerated at SFF Hazelton[1], filed a Civil Rights Complaint Form. Dkt. No. 1. On September 18, 2012, the plaintiff filed the complaint on a court-approved *Bivens* Form. Dkt. No. 8. On September 24, 2012, the plaintiff was granted leave to proceed *in forma pauperis*. Dkt. 13. On October 15, 2012, the plaintiff paid her required initial partial filing fee. Dkt. 16. On January 25, 2013, the undersigned conducted a preliminary review of this matter and determined that summary dismissal was not appropriate. Accordingly, an Order to Answer was entered. Dkt. 22. The defendant[2] filed a Motion

---

[1] The allegations raised in the complaint involve events that occurred at SFF Hazelton. The plaintiff was confined in FCI WASECA when she filed the complaint, and she remains confined to that facility as of this date.

[2] Although the plaintiff named the United States of America as a defendant, it is not a proper defendant in a <u>Bivens</u> action. Moreover, for reasons discussed more fully within this document, the plaintiff should not be permitted to pursue a FTCA within this action. Accordingly, for simplicity sake, this Report and Recommendation refers to Alicia Wilson as the defendant.

to Dismiss, or in the Alternative, For Summary Judgment on March 26, 2013. Dkt. No. 33. On April 2, 2013, the defendant filed a Memorandum in Support of her motion. Dkt. No. 36. The plaintiff filed an answer to the defendant's Motion on June 3, 2013. Dkt. 46. Accordingly, this case is pending before the undersigned for a Report and Recommendation pursuant to LR PL P2.

## II. Facts

### A. Plaintiff's Injury

In her complaint, the plaintiff asserts that, at some point in May 2010, she injured her right leg while performing step aerobics. Dkt. No. 8 at 9. The plaintiff was seen by the defendant at SFF Hazelton on June 24, 2010, for treatment of this injury. *Id.* Both the defendant and the plaintiff agree that the defendant performed an examination on the plaintiff's right leg that included palpation. *See* Dkt. No. 36 at 3 and Dkt. No. 8 at 9. After discussing with the plaintiff the circumstances of the injury and the level of pain associated with it, the defendant concluded that the injury was likely tendinitis and prescribed indomethacin, a nonsteroidal anti-inflammatory drug. Dkt. No. 8 at 9. The plaintiff alleges that she continued to experience pain in her right leg even after taking indomethacin. *Id.* On July 8, 2010, fourteen days after the defendant examined her, the plaintiff was transferred from SFF Hazelton to FPC Marianna. *Id.* While there, x-rays were performed and it was determined that the plaintiff had previously suffered a stress fracture in her right leg and that it was in the process of healing.[3] *Id.* The plaintiff generally alleges that she suffered and continues to suffer pain as a result of this injury and the subsequent treatment she received for it. *Id.* at 7-8.

### B. Plaintiff's Complaint

In the instant case, the plaintiff is attempting to bring two claims relating to her injuries.

---

[3]In truth, the radiology results returned as negative except for a possible healing stress fracture. Dkt. 36-2, p. 26.+

First, the plaintiff has filed a *Bivens* action against the defendant. *See generally Id.* Second, the plaintiff intends to incorporate a Federal Tort Claims Act suit against the United States of America. Dkt. No. 46 at 1, n.1. Both claims stem from the right leg injury and the resulting pain described above. More specifically, in regard to the defendant, the plaintiff has made three claims all alleging Eighth Amendment violations:

> 1. The defendant was deliberately indifferent to plaintiff's medical condition by failing to order an x-ray.
>
> 2. The defendant failed to properly prescribe and monitor pain medication.
>
> 3. The defendant failed to refer the plaintiff to an orthopedic specialist.

Dkt. No. 8 at 7-8.

The plaintiff alleges that these actions have led to pain and/or immobility in her right leg, right foot, right hip, left leg, left knee, stomach, and spine. *Id.* at 15. As such, the plaintiff is asking for $810,000 in compensatory damages, $75,000 in nominal damages, and $75,000 in punitive damages. *Id.* The plaintiff has also asked for reasonable fees and costs, as well as any other reasonable relief the Court deems necessary. *Id.*

## C. Defendant's Response

Jarod J. Douglas, an Assistant United States Attorney for the Northern District of West Virginia, has prepared all of the defendant's responses, motions, and memorandums. *See* Dkt. Nos. 33 and 36. In these documents, the defendant asserts that the plaintiff has improperly included the United States as a party to a *Bivens* claim and asks that the United States be dismissed from the action. Dkt. No. 33 at 1, n.1. The defendant also makes the following three arguments in regard to the plaintiff's allegations:

> 1. The plaintiff has failed to exhaust her administrative remedies.

2. The plaintiff's claims fail on the merits.

3. The defendant is subject to qualified immunity.

Dkt. No. 36.

*D. Plaintiff's Reply*

In reply to the defendant's Motion to Dismiss or for Summary Judgment, the plaintiff sets forth a statement of facts which primarily summarizes her medical care at FPC Marianna. The undersigned notes that the plaintiff has filed a *Bivens* complaint against two defendants at FPC Marianna which alleges deliberate indifference to her right leg injury during her confinement at that facility.[4] The plaintiff has also attached a General Affidavit from Cherron Jenkins, a licensed Chiropractor in the State of South Carolina. Dkt. 46-2. Dr. Jenkins indicates that she reviewed the plaintiff's medical records and states her opinion what action should have been taken following the plaintiff's initial injury and complaint to medical. It is pertinent to note that Dr. Jenkins does not indicate any negligence or deliberate indifference on the part of the defendant.

### III. Standard of Review

*A. Motion to Dismiss*

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin,* 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs, Inc. v. Matkari,* 7 F.3d

---

[4]*See* 5:12-cv-00363-MCR-EMT filed in the Northern District of Florida on November 6, 2012.

1130, 1134 (4th Cir.1993); *see also Martin,* 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." *Conley,* 355 U.S. at 45-46. In *Twombly*, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Conley,* 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Id.* (citations omitted), to one that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I.DuPont de Nemours & Co.,* 324 F.3d 761, 765 (4th Cir.2003) (citing *Dickson v. Microsoft Corp.,* 309 F.3d 193, 213 (4th Cir.2002); *Iodice v. United States,* 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in *Ashcroft v. Iqbal,* where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. *Id.*

**B. Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. *See Blackledge v. Allison,* 431 U.S. 63, 80 (1977). So too, has the Fourth Circuit Court of Appeals. *Maynard v. Dixon,* 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. *Miller v. Federal Deposit Ins. Corp.,* 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves-Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. *Anderson,* 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88 (1986).

## IV. Analysis

*A.* **Bivens** *Action*

### 1. Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. *Booth v. Churner*, 532 U.S. 731, 741 (2001). A *Bivens* action, like an action under 42 U.S.C. § 1983, is subject to the exhaustion of administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," and is required even when the relief sought is not available. *Porter* at 524 and *Booth* at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted prior to filing a complaint in federal court. *See Porter*, 534 U.S. at 524 (citing *Booth*, 532 U.S. at 741).

The Bureau of Prisons provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). If the prisoner achieves no satisfaction informally, she must file a written complaint to the warden (BP-9), within 20 calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the warden's response, she may appeal to the regional director of the BOP (BP-10) within 20 days of the warden's response. Finally, if the prisoner has received no satisfaction, she may appeal to the Office of General Counsel (BP-11) within 30 days of the date the Regional Director signed the response. An inmate is not deemed to have exhausted her administrative remedies until she has filed her complaint at all levels. 28 C.F.R.§ 542.10-542.15; *Gibbs v. Bureau of Prison Office, FCI*, 986 F.Supp. 941, 943 (D.Md. 1997).

During her time in the custody of the BOP, the plaintiff has filed twenty (2) requests for administrative remedies. Dkt. 33-3, p. 2. In total, eight (8) of the requests pertain to the injury the

7

plaintiff sustained to her lower right leg. *Id*. The first BP-9 related to her leg was receipted on January 10, 2011, at FCI Marianna. Assigned Remedy ID No. 621802-F1and dated December 26, 2010, it was not initiated until six months after her only interaction with the defendant. The request states "I would like to see and talk to an orthopedic and MRI specialist to evaluate the extensive damage to my leg." Dkt. 33-5, p. 1. FCI Marianna closed this remedy on January 27, 2011, after issuing a denial decision which stated:

> A review of your medical record reveals that you arrived at FCI Marianna on July 14, 2010. You reported to Medical Staff on July 20, 2010 that your right leg was hurting and that you had injured your leg while doing aerobics at SFF Hazelton, West Virginia in May of 2010. An x-ray was taken of your lower right leg on July 29, 2010. The x-ray reading showed focal cortical thickening mid medial/posterior tibial cortex, questionable healing stress fracture. You were given a support brace and advised to restrict your activities, no running, jumping, etc. Due to your continued complaint of pain in your leg, your medical provider has requested an MRI. MRI testing must be approved by the Regional Office. The request was submitted on January 21, 2011, (a response normally takes a few weeks). You will be notified of the response from the Regional Office once it has been obtained. Regarding your request to talk with an Orthopedic Specialist, once the MRI results are obtained further treatment will be determined.

*Id.* at p.2.

On February 7, 2011, the Regional Office received the plaintiff's appeal of the Warden's decision and rejected the appeal on February 16, 2011. On March 3, 2011, the Regional Office received the plaintiff's refiled appeal and rejected the appeal on March 18, 2011. On April 5, 2011, the Regional Office accepted the plaintiff's refiled appeal dated January 31, 2011, in which she stated:

> On January 30, 2011, I got my response back from my BP-22 (13) 9 pertaining to the injury to my lower right leg. I injured my leg in Hazelton, W. Virginia doing step aerobics. I went to medical and I never had an x-ray done until I arrived at Marianna camp. I found that my leg was fracture [sic], but I was never referred to an orthopedic doctor. I didn't get a brace for my leg. I was

8

> given an ace bandage after the fact that I complain [sic] about the ankle support they gave me for my leg. Also I requested an MRI to be done after several appts. Medical wasn't the one who just requested it. In my 9 response, they stated that once they get the results from my MRI, then I'll be able to see an orthopedic specialist, but I was denied to get an MRI. I would like to see an orthopedic specialist about my leg.

Dkt. 33-5, p. 3.

On May 26, 2011, the Regional Office closed this remedy after issuing a denial decision explaining in pertinent part:

> You allege you fractured your lower right leg while doing step aerobics at FCI Hazelton, but did not receive an x-ray until you arrived at FCI Marianna. You further claim you have not received a magnetic resonance imaging (MRI) study or an evaluation with an orthopedic specialist. As relief, you request to see an orthopedic specialist.
>
> A review of your medical records revealed you were evaluated on June 24, 2010, at which time you complained of pain in your lower right leg. You informed your medical provider that you thought you pulled a muscle a few weeks prior while doing step aerobics. The Mid-level Practitioner (MLP) conducted a comprehensive examination and noted you winced with pain with palpation of your front lower right leg. No erythema, edema or crepitus was observed. Therefore, you were advised to avoid doing step aerobics until you felt better.
>
> Subsequently, you departed FCI Hazelton on July 6, 2010, and arrived at FCI Marianna on July 14, 2010. On July 20, 2010, you were seen in the clinic, at which time you complained of pain in your lower right leg. You further stated an x-ray was ordered at your previous institution; however, you were transferred before it could be completed. An x-ray was ordered and completed on July 29, 2010. The x-ray results showed focal cortical thickening mid-medial/posterior tibial cortex, questionable healing stress fracture. Typical treatment for stress fractures includes acetaminophen and devices to reduce the bone's weight-bearing load until healing occurs. Thus, you were provided a support brace and instructed to refrain from participating in aerobic-type activities.
>
> A request for an MRI was submitted due to your continued complaints of right leg pain; however, the request was disapproved by the Utilization Review Committee on February 1, 2011. You were evaluated on April 11, 2011, for complaints of back pain which you attributed to a stress fracture

of your lower right leg. The MLP noted your stress fracture was well healed
and you were walking independently without limping. Acetaminophen was
prescribed to address your pain and you were instructed to follow-up at
sick call as needed. Based on this information, an orthopedic consultation
is not necessary at this time.

Dkt. 33-5, p. 4.

On June 3, 2011, the Central Office received the plaintiff's appeal of the Regional Office decision and rejected the appeal on July 20, 2011. On August 22, 2011, the Central Office received the plaintiff's refiled appeal and rejected the appeal of August 26, 2011. On September 26, 2011, the Central Office received the plaintiff's refiled appeal and rejected the appeal on October 11, 2011. On December 14, 2011, the Central Office accepted the plaintiff's refiled appeal dated June 19, 2011, in which she stated:

> I've been [putting in numerous cop-outs on my leg and I'm still in pain. I never
> had the proper brace or any crutches for my leg. The only kind of bandage I had
> was an ace bandage and they gave me an ankle brace made out of cloth material
> that doesn't serve any purpose for my leg. So I don't understand how my stress
> fracture is supposed to be treated. In the Response from Regional, it stated that
> the treatment for a stress fracture includes acetaminophen and devices to reduce
> the bone's weight-bearing load until healing occur [sic]. Well, I never had any
> devices to reduce the bone's weight-bearing load to help my leg heal properly.
> My x-rays keep coming back abnormal. It's also true that I walk with a limp and
> I have problems with my lower back and hip. I'm also off balance. That's why
> Dr. Toledo recommended me to do some stationary exercises on the bicycle so
> I can get my hip, back, and spine align [sic]. I'm scared to so right now.

Dkt. 3w3-5, pp. 5-6

On March 7, 2012, the Central Office closed the plaintiff's appeal after issuing a denial decision as follows:

> This is in response to your Central Office Administrative Remedy Appeal in
> which you contend you fractured your right leg while doing step aerobics at FCI
> Hazelton but did not receive an x-ray until you arrive at FCI Marianna. You
> further contend you have not received an MRI or an evaluation with an orthopedic

> specialist. As relief, you request to see an orthopedic specialist.
>
> Our investigation and review of documentation related to your appeal reveals the Utilization Review Committee denied a request for an MRI on January 31, 2011. You were evaluated on April 11, 2011, by your Mid-Level Provider for complaints of back pain related to a stress fracture of your lower right leg. An x-ray performed on your right lower leg was negative. The results of this exam revealed your stress fracture was healed and you were walking without crutches or can and you were not limping. You were prescribed appropriate medication for your medical condition.
>
> Medical staff determined an orthopedic specialist is not clinically indicated at this time. You are encouraged to follow-up at sick call as needed.

Dkt. 33-5, p. 11

In the instant case, the plaintiff has raised three claims against the defendant: (1) she failed to order an x-ray; (2) she failed to prescribe effective pain medication; and (3) she failed to refer her to an orthopedic specialist. No where in the series of remedies that she filed regarding her leg does she ever mention pain medication, or anything remotely suggesting that she was complaining about any failure by BOP staff to prescribe appropriate pain medication. Therefore, it is clear that said claim has not been exhausted. With respect to her claim that the defendant failed to order an x-ray or refer her to an orthopedic specialist, it is pertinent to note that the plaintiff did not begin the administrative remedy process set forth above until six months after her one and only interaction with the defendant. No where in her BP-9, BP-10, or BP-11 does she refer to the defendant by name. Moreover, the only mention the plaintiff makes about her "treatment" at Hazelton is her BP-10 in which she stated she injured her leg there, went to medical and did not have an x-ray done until she arrived at Marianna. Dkt. 33-5, p. 3 Even under the most liberal reading of the plaintiff's grievances, it is impossible to find that the plaintiff was complaining about her medical treatment at Hazelton during the fourteen days between when she was seen by the defendant once, and she was transferred

11

to Marianna. Accordingly, the plaintiff's complaint should be dismissed for failure to exhaust administrative remedies. However, if the Court is inclined to find that the plaintiff has exhausted her administrative remedies, the complaint is still due to be dismissed for failure to state a claim upon which relief can be granted.

**2. Deliberate Indifference**

To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To succeed on an Eighth Amendment "cruel and unusual punishment" claim, a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

A serious medical condition is one that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would recognize the need for a doctor's attention. *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied*, 500 U.S. 956 (1991). A medical condition is also serious if a delay in treatment causes a lifelong handicap or permanent loss. *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3rd Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988).[5]

---

[5] The following are examples of what does or does not constitute a serious injury. A rotator cuff injury is not a serious medical condition. *Webb v. Prison Health Services*, 1997 WL 298403 (D. Kansas 1997). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not sufficiently serious. *Veloz v. New York*, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999). Conversely, a broken jaw is a serious medical condition. *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101 (4th Cir. 1995); a detached retina is a serious medical condition. *Browning v. Snead*, 886 F. Supp. 547 (S.D. W. Va. 1995). And, arthritis is a serious medical condition because the condition causes chronic pain and affects the prisoner's daily activities. *Finley v. Trent*, 955 F. Supp. 642 (N.D. W.Va. 1997).

The subjective component of a cruel and unusual punishment claim is satisfied by showing that the prison official acted with deliberate indifference. *Wilson*, 501 U.S. at 303. A finding of deliberate indifference requires more than a showing of negligence. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial of nonexistent." *Id.* at 844.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990). A mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). A constitutional violation is established when "government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health." *See Morales Feliciano v. Calderon Serra*, 300 F.Supp.2d 321, 341 (D.P.R. 2004) (citing *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003)).

In the instant case, the plaintiff has failed to show that the conduct of the defendant rose to the level of a constitutional violation. First, the plaintiff has not sufficiently established the objective component of a *Wilson* analysis. This was the first time the plaintiff had been seen by any medical

personnel about her leg pain, so it is obvious that a physician had not previously determined that her right leg required medical care in any of the three ways the plaintiff requests. Alternatively, the complained of injury does not appear to be the type that a layperson would identify. In fact, the plaintiff herself initially thought the pain was from a pulled muscle. Dkt. No. 36-1, p. 2. Furthermore, the plaintiff has not established that her healed stress fracture will result in lifelong handicap. Other than the alleged pain of which the plaintiff complains, the only evidence of any future disability she has presented is a registered nurse's comment that she might develop arthritis in her leg. Dkt. No. 8 at 11.[6]

Even assuming that the plaintiff has met the objective component of *Wilson*, it is clear that she has failed to establish the subjective component. The defendant performed a full examination of the plaintiff and the injury of which she complained. *See generally* Dkt. No. 36-1. Based upon this examination, the defendant reached a reasonable diagnosis of probable tendinitis from overuse and prescribed reasonable treatment for that diagnosis. In no way does the defendant's conduct "shock the conscience." Rather, it seems quite clear that in hindsight the plaintiff simply disagrees with the defendant's treatment. This disagreement falls well short of an Eighth Amendment violation.

Finally, to the extent that the plaintiff may be alleging that her medical care at Hazelton amounted to malpractice, ordinary medical malpractice based upon negligence in providing care does not state a claim under the Eighth Amendment. *See Estelle*, *supra* at 106. ("Medical

---

[6]The affidavit submitted by the plaintiff from Cherron Jenkins, a licensed Chiropractor in the State of South Carolina indicates only that she will "continue to have the pain in her back until she is able to receive the care necessary to bring stability to her right leg while she walks." Dkt. 46-2. P. 2.

14

malpractice does not become a constitutional violation merely because the victim is a prisoner."). Furthermore, the large majority of cases alleging medical Eighth Amendment violations concern the denial of medical care to a prisoner rather than the provision of substandard care; "no care," rather than "bad care." *See e.g,, Holmes v. Sheahan*, 930 F.2d 1196 (7th Cir.), *cert. denied*, 502 U.S. 960 (1991). Here, even if the plaintiff received "bad care," she did receive care. Accordingly, nothing in the record or in the plaintiff's complaint establishes any facts sufficient to support a finding that the defendant was deliberately indifferent to her medical needs, and accordingly, the plaintiff's complaint as it relates to her 8th Amendment claims under *Bivens* should be dismissed for failure to state a claim.

***B. FTCA Suit***

While the plaintiff attempted to file a FTCA claim as part of her *Bivens* action, the plaintiff failed to do so in the required manner for at least two reasons. First, the plaintiff's Administrative Tort Claim Number TRT-MXR-2012-05849 was not filed until August 13, 2012, and was not rejected until March 19, 2013. *See* 5:13-cv-00069-FPS-JES, Dkt. No. 7. As the instant case was initiated on August 21, 2012, it is clear that the plaintiff failed to exhaust her administrative tort claim before bringing the action at hand. Although the plaintiff attached the letter denying her administrative tort claim to her Motion for an extension of time to respond or reply to the defendant's Motion to Dismiss or for summary judgment, at no time did she file a Motion to Amend her complaint to add a FTCA.

In addition, the undersigned recognizes that the Supreme Court has held that "a person can sue under the Federal Tort Claims Act to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee.*" United States v. Muniz*, 374 U.S. 150 (1963). However, the FTCA does not create a new

cause of action. Medina v. United States. 259 F.3d 220, 223 (4th Cir. 2001). "The statute permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." Id.

Under West Virginia law, certain requirements must be met before a health care provider may be sued. W.Va. Code §55-7B-6. This section provides in pertinent part:

> **§ 55-7B-6. Prerequisites for filing an action against a health care provider; procedures; sanctions**
>
> (a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section.
>
> (b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of rule 15 of the rules of civil procedure.

This Court previously held that compliance with W.Va. Code §55-7B-6 is mandatory prior to filing suit in federal court. *See Stanley v. United States*, 321 F.Supp.2d 805, 806-807 (N.D.W.Va.2004).[7] Because the plaintiff has not complied with W.Va. Code § 55-7B-6, any attempt

---

[7] In Stanley, the plaintiff brought suit against the United States alleging that the United States, acting through its employee healthcare providers, was negligent and deviated from the "standards of medical care" causing him injury. The Court found that there was no conflict between the state pre-filing requirements and

to raise a FTCA in this action must be denied.[8]

## V. Recommendation

In consideration of the foregoing, it is the undersigned's recommendation that defendant's Motion to Dismiss, or in the Alternative, For Summary Judgment (Doc. 33) be **GRANTED**, and the plaintiff's *Bivens* claims against the defendant be **DISMISSED WITH PREJUDICE.** It is further recommended that to the extent the plaintiff seeks to add a FTCA to this action, the same should be **DENIED**.

Within fourteen (14) days after being served with a copy of this recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable Irene M. Keeley, Jr., United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to her last known address as shown on the docket and to counsel of record via electronic means.

---

the pre-filing requirements of the FTCA. Stanley, 329 F.supp. 2d at 808-09. "[t]here is nothing to prevent a plaintiff from complying with both requirements." Id. at 809.

[8]A review of CM/ECF indicates that a FTCA involving the plaintiff's alleged leg injury is currently pending before Judge Stamp with a referral to Magistrate Judge Seibert. See 5:13-cv-00069-FPS-JES.

DATED: August 16, 2013

*John S. Kaull*

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE